NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0127n.06

No. 17-1818

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TRESHA K. NEFF, | ) | **FILED**<br>Mar 12, 2018<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF EAST LANSING, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: SILER and LARSEN, Circuit Judges; BLACK, District Judge.[*]

LARSEN, Circuit Judge. Contending that she was overlooked for promotions and denied training, tuition reimbursement, and favorable assignments and scheduling because of her sex, plaintiff Tresha Neff sued her employer, defendant City of East Lansing, alleging sex discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2102 *et seq.* The district court granted summary judgment to the City on all claims. We AFFIRM.

I.

The City has employed Neff as a police officer in the East Lansing Police Department (ELPD) since 1994. When Neff initiated this case in 2016, she held the rank of sergeant, having last been promoted in 2011. While the case was pending below, the City promoted Neff to

---

[*] The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

lieutenant. Neff claims that throughout her employment, the City denied her training opportunities, tuition reimbursement, and favorable scheduling and assignments, while it afforded those perks to male employees. Neff also claims that, prior to her promotions to sergeant and lieutenant, the City had on numerous occasions passed her over for promotions in favor of male candidates.

The only promotion decisions before this Court, however, occurred in 2013 and 2014, when the City promoted Officer Stephen Gonzalez and Officer Scot Sexton, respectively, over Neff and other candidates.[1] Police Chief Juli Liebler, the decision-maker for both promotion decisions, explained in a sworn declaration that she considered both "measurable" and "immeasurable" qualifications when deciding whom to promote.[2] She stated, "'Measurable' qualifications are qualifications I can see on a resume, like a candidate's education or years of experience; or qualifications I can see in a performance evaluation, like competency." On the other hand, "'[i]mmeasurable' qualifications are qualifications that are not so easy to see on paper, and they include qualifications like being a good leader, setting a good example for others, making sacrifices for the ELPD, being proactive, doing more than just the minimum, working well with peers, and earning the respect of your co-workers." Liebler also stated that most candidates had similar "measurable" qualifications, so it was often the "immeasurable" qualifications that distinguished the candidates. She believed that "'immeasurable'

---

[1] The district court concluded that Neff's Title VII claims for denial of promotions occurring prior to January 8, 2015, and all such ELCRA claims occurring prior to January 25, 2013, were time-barred, and that any argument related to a promotion in 2016 was not before the court because Neff did not include the promotion in her complaint. On appeal, Neff does not challenge these conclusions and, as such, has forfeited any argument to the contrary. *See Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 307 (6th Cir. 2010).

[2] Under the parties' collective bargaining agreement, she had discretion to make promotions based on "length of service, quality of service and supervisory potential."

qualifications, like leadership, respect of co-workers, being engaged in and willing to sacrifice for the job, become more important in lieutenant and captain promotions, because those command officers perform primarily supervisory and administrative duties, and less actual police work."

Liebler explained that when she promoted Gonzalez over Neff and other candidates in 2013, most candidates had similar "measurable" qualifications, but that Gonzalez had a slight advantage in terms of education because he already had one master's degree and was working on another. Moreover, she believed that in terms of "immeasurable" qualifications, Gonzalez was the most qualified: "he was a good supervisor, was very level-headed, made good job decisions, was supportive of the administration, and was very engaged in the job." Informal feedback from other officers told Liebler that Gonzalez was well-respected by his co-workers and subordinates. Liebler "decided that Mr. Gonzalez's superior leadership skills outweighed the other candidates' seniority and experience, because it was his leadership skills that would make him a good lieutenant, not having a few more years of policing experience."

For the 2014 promotion of Sexton over Neff and other candidates, all candidates again had similar "measurable" qualifications, but it was the "immeasurable" qualifications that distinguished Sexton from the rest. Based on her observations of Sexton's performance as a supervisor, Liebler believed that he "was a good supervisor that was committed and engaged in the job, regularly mentored his subordinates, and was good at following through on tasks and being proactive, sometimes solving problems before he was even asked to do so." She further stated that he made sacrifices for the ELPD and set a good example by working at undesirable times and working often.

Neff had not displayed similar leadership qualities, according to Liebler. Liebler explained that Neff "would only schedule herself in a way that benefitted her, not the ELPD" by "scheduling herself for just the bare minimum, while also taking advantage of overtime and holiday pay opportunities [and] leaving other officers to work the less desirable times." Liebler concluded that Neff set a poor example for other officers.[3] Liebler also cited Neff's lack of communication and follow-through as examples of her deficient leadership and supervisory skills. Finally, Liebler noted that, when deciding whom to promote in 2014, she asked captains and lieutenants for their views of the candidates; the three who replied ranked Neff as the least qualified for promotion.

Nonetheless, believing that the City's actions against her were based on her sex, not merit, Neff sued the City, raising claims of sex-based disparate treatment in violation of Title VII and the ELCRA. She also raised a claim of sex-based disparate impact in violation of Title VII, asserting that the City's promotion process systematically disfavored women. The City moved for summary judgment on all claims. The district court granted the City's motion and dismissed the case. Neff appealed to this Court.

## II.

Only Neff's disparate-treatment claim for failure to promote is properly before us.[4] That claim is based not on direct evidence of sex discrimination, but circumstantial evidence, which

---

[3] Chief Jeff Murphy, who took over as chief after Liebler, likewise had concerns that Neff set a "terrible example" for younger officers by her selfish scheduling of vacation time and holiday hours.

[4] The district court concluded that Neff had forfeited any argument that the City was not entitled to summary judgment on her disparate-treatment claims based on denial of training, tuition reimbursement, and favorable scheduling and assignments; she had forfeited these claims by not addressing, or only offering perfunctory arguments as to how, she was treated differently than similarly situated male employees, a necessary predicate to Neff establishing a *prima facie* case

means we proceed under the *McDonnell Douglas–Burdine* test. *See Johnson*, 215 F.3d at 572.[5]

Under that test, Neff "bears the burden of establishing a *prima facie* claim of discrimination." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th. Cir. 2005). But the City conceded below that Neff could establish a *prima facie* case of discrimination for failure to promote. The burden then shifted to the City "to proffer a legitimate, non-discriminatory reason for the employment decision at issue." *Id.* It did: that Neff was not the most qualified candidate. Because the City offered a legitimate, nondiscriminatory reason, Neff bears the burden of establishing that the City's "stated reason is mere pretext for its true discriminatory motives." *Id.* Neff may do so "(1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the employer's conduct[;] or (3) by showing that the proffered reason was insufficient to warrant the challenged conduct." *Id.* at 245.

Neff argues that the City's proffered reason—that Neff was not the most qualified candidate—has no basis in fact and was insufficient to warrant choosing Gonzalez and Sexton over her. Neff claims that she was the more qualified candidate in both instances in terms of

---

of discrimination. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572–73 (6th Cir. 2000). On appeal, Neff does not challenge the court's conclusion that she forfeited these claims, and again fails to address, in anything beyond cursory statements, the City's argument that she has failed to show that the male employees were similarly situated to her. She thus has forfeited these claims. *Kovacic*, 606 F.3d at 307. The court also found that Neff had forfeited any argument regarding her disparate-impact claim. Neff now argues that this was error, contending that it was the court's duty to inquire into the record to determine whether genuine issues of fact remained, even absent argument on her part. It was not. *See Wardle v. Lexington-Fayette Urban Cty. Gov't*, 45 F. App'x 505, 509 (6th Cir. 2002) (per curiam) ("[A] district court is not required to search the record to determine whether genuine issues of material fact exist when the non-moving party has failed to point them out."); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

[5] ELCRA and Title VII claims are assessed under the same evidentiary framework. *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003).

experience, seniority, and training. "Evidence that the plaintiff was more qualified than the successful applicant can in some circumstances be sufficient to raise a genuine issue of material fact that the employer's proffered explanation is pretextual." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009). But in cases such as this, where "there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).

Here, Neff's only evidence in support of her claim is that she has been with the ELPD approximately three years longer than Gonzalez, and approximately five years longer than Sexton, and that she took more training classes than either candidate. This is not enough for Neff to show that the City's legitimate, nondiscriminatory reason was a mere pretext for discrimination. Like most employers, the ELPD does not grant promotions solely on the basis of an employee's length of employment. While Liebler considered the candidates' education and experience when making her decisions, she found that the candidates were relatively equal as to those criteria. But, as one would expect when promoting an employee to a leadership position, Liebler also considered the candidates' leadership skills and ability to work with others. *See Browning v. Dep't of the Army*, 436 F.3d 692, 696–97 (6th Cir. 2006) ("[E]mployment-discrimination laws do not diminish lawful traditional management prerogatives in choosing among qualified candidates, and an employer has great flexibility in choosing a management-level employee." (citations and brackets omitted)). Finding, as described above, that Gonzalez and Sexton were superior to Neff in those areas, Liebler promoted them over Neff.

Although Neff does not challenge Liebler's sworn declaration directly, she criticizes the City's reliance on Gonzalez's and Sexton's "immeasurable" qualifications over her own superior "measurable" qualifications. This Court has recognized "that subjective evaluation processes intended to recognize merit provide ready mechanisms for discrimination." *Grano v. Dep't of Dev.*, 699 F.2d 836, 837 (6th Cir. 1983). "[T]he legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective . . . ." *Id.* "The ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action." *Id.*

But Neff gives the Court little with which to closely scrutinize Liebler's decisions. She claims that the City cannot articulate what "immeasurable" qualities Gonzalez and Sexton possessed but that Neff did not. Yet Liebler, in fact, did just that, by citing concrete examples, including Neff's self-serving scheduling decisions and poor handling of prior projects, to establish that Neff lacked leadership skills that Gonzalez and Sexton possessed. Moreover, Neff does not challenge any of Liebler's conclusions regarding the subjective qualifications as erroneous or false, or otherwise explain how the criteria were a disguise for discriminatory action.

Neff, therefore, has not contradicted the evidence offered by the City in support of its legitimate, nondiscriminatory reason for the promotion decisions—that Neff was not the most qualified candidate. Although we are to look closely at decisions made on the basis of subjective criteria, Neff has not shown that the use of subjective criteria here was a disguise for discrimination. *Id.* Instead, all that Neff has offered this Court is her own subjective belief that she was more qualified than others who were promoted and that she was discriminated against based on her sex. That is insufficient to show pretext and overcome a motion for summary

judgment.[6]  *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992) (concluding that the plaintiff could not establish pretext based on statements that were "nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law"); *see also Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2006) (stating that a plaintiff's subjective beliefs regarding her "qualifications in relation to those of other applicants, without more, cannot sustain acclaim of discrimination" (citation omitted)).  Neff has failed to meet her burden of showing pretext, and the district court correctly granted summary judgment in the City's favor on her disparate-treatment claim for failure to promote.

\* \* \*

We AFFIRM the judgment of the district court in favor of the City.

---

[6] For the same reasons, Neff's "expert report" is unpersuasive.  Although the report concludes that it is "highly probable" that Neff was passed over for Sexton because of her sex, the report offers only the same arguments that Neff does now—that Neff had more experience, seniority, and training.  Other peculiarities call into question the strength of the report.  The report is unsworn.  *See Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) ("The [expert report] is unsworn and thus is hearsay, which may not be considered on a motion for summary judgment.").  And the report's author does not explain his qualifications or why any qualifications that he does have render him able to speak to the issue of sex discrimination.  Nor, for that matter, does Neff offer any such explanation.