**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0825n.06
Filed: November 9, 2006

**05-3597**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DANIEL L. BROWN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FIRST NATIONWIDE MORTGAGE | ) | SOUTHERN DISTRICT OF OHIO |
| CORPORATION, SOUTHEAST EQUITY | ) | |
| TITLE CORPORATION, and | ) | |
| HOMECOMINGS FINANCIAL, a GMAC | ) | |
| Company, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: DAUGHTREY and COLE, Circuit Judges, and RESTANI,[*] Judge.

**PER CURIAM.** Plaintiff Daniel Brown appeals the district court's grant of summary

judgment to defendants First Nationwide Mortgage Corporation, Southeast Equity Title

Agency, Inc., and Homecomings Financial Network, Inc., in an action in which Brown

alleged wrongdoing by the state court, the parties, and counsel in a mortgage foreclosure

proceeding commenced in 1991 and finalized in 1997. Following entry of the decree of

foreclosure, the parties entered a settlement agreement that included a lease-back to

Brown with an option to repurchase, which Brown executed in 2000. The plaintiff then filed

---

[*]The Hon. Jane A. Restani, Chief Judge of the United States Court of International Trade.

suit in federal court claiming that First Nationwide had procured the state court mortgage decree by fraud and that Southeast Equity Title and Homecomings Financial had also engaged in fraud and were guilty of the intentional infliction of emotional distress. The complaint also included claims in contract, tort, and equity against First Nationwide for breach of duty of good faith, conversion, rescission, breach of the settlement agreement, and intentional infliction of emotional distress.

On appeal, Brown argues that the district court erred in applying the *Rooker-Feldman* doctrine to bar his claims against First Nationwide and that summary judgment was otherwise improper because the record reflects genuine issues of material fact as to his claims. We conclude that the district court's application of *Rooker-Feldman*, although legally appropriate at the time, has turned out to have been incorrect in light of intervening case law. Even so, we conclude that summary judgment was properly entered in favor of the defendants and, therefore, find no basis on which to overturn the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1990, Brown became delinquent in making his mortgage loan payments to Glendale Federal Bank. As a result, the bank began foreclosure proceedings on June 13, 1991, but the Court of Common Pleas in Montgomery County, Ohio, did not render its final decree until June 30, 1997, due to extensive litigation instigated by Brown, including five bankruptcy petitions, many federal civil complaints, and two unsuccessful appeals of the

foreclosure itself.   Defendant First Nationwide was the servicing agent on Brown's foreclosed loan and acted as Glendale Federal Bank's agent during the foreclosure proceedings.   Pursuant to an order of the state court, the Montgomery County sheriff issued a deed to Glendale Federal Bank.

During the following year, Glendale Federal Bank litigated its right to evict Brown. Ultimately, on July 31, 1999, the parties entered into an agreement to settle and release all claims against each other, and Brown leased the property from First Nationwide, acting as the servicing agent of owner Glendale Federal Bank, with an option to repurchase. Brown subsequently repurchased the property on May 18, 2000, by securing a mortgage loan from Aames Home Loan.   Defendant Southeast Equity served as the closing agent for this second mortgage loan, and defendant Homecomings Financial acted as the servicing agent.   At the closing, First Nationwide paid Brown the previously agreed-upon settlement fee of $12,450, less setoff for one month's unpaid rent of $600, the receipt of which Brown acknowledged, and in exchange Brown signed another general release of First Nationwide.

After closing on this loan, Brown filed suit against First Nationwide and Aames Home Loan in the Common Pleas Court of Montgomery County, Ohio, alleging the same causes of action as he later asserted in the complaint filed in federal district court.   In the state trial court, Aames Home Loan filed a motion to stay the proceedings pending

arbitration, which was granted based on the court's finding that Brown and Aames Home Loan had a valid written agreement for arbitration.

Subsequent to the Ohio state court's decision, Brown instituted this action in the district court, naming as defendants First Nationwide, Aames Home Loan, Southeast Equity, and Homecomings Financial. Brown alleged causes of action based on supposed wrongdoing by the state court, the parties, and counsel in the mortgage foreclosure proceeding that was finalized in 1997; in the 1999 settlement of that matter by lease back to Brown with an option to repurchase; and in the ultimate settlement of that matter by Brown's repurchase of the property in 2000. Against First Nationwide, the servicing agent on the foreclosed mortgage loan, Brown alleged three counts of fraud, breach of the duty of good faith, rescission of the sale of real property, conversion, breach of a settlement agreement, and intentional infliction of emotional distress. Brown claimed that Aames Home Loan, the mortgagee of his second mortgage loan, violated the Truth in Lending Act, 15 U.S.C. § 1640, and committed fraud and intentional infliction of emotional distress. Against Southeast Equity and Homecomings Financial, the closing agent and the servicing agent of Brown's second mortgage loan, respectively, Brown alleged causes of action based on fraud and intentional infliction of emotional distress.

Pursuant to the recommendations of a magistrate judge, the district court dismissed Brown's claims against Aames Home Loan based on the state court's finding that the parties had a binding arbitration agreement and Brown's claims were arbitrable, a ruling

that is not part of this appeal. The remaining three defendants moved for summary judgment, and the magistrate judge filed two reports in which he recommended granting these motions, finding that Brown provided no evidence to show the existence of a genuine issue for trial. The magistrate judge also concluded that Brown's claims against First Nationwide were barred from consideration in federal court by the *Rooker-Feldman* doctrine. Following a *de novo* review of both reports and all filings in the matter, the district court issued an order adopting the magistrate judge's reports in their entirety. From that order, Brown now appeals.

## DISCUSSION

### A. The *Rooker-Feldman* Doctrine

As noted above, Brown had engaged in extensive litigation with defendant First Nationwide in state court prior to filing his complaint in federal court. As the servicing agent on Brown's first mortgage loan, First Nationwide participated in the foreclosure proceedings that were ultimately finalized in 1997. When Brown filed suit in federal court, First Nationwide moved to dismiss for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. The district court granted First Nationwide's motion, adopting the magistrate judge's finding that Brown's claims relating to the mortgage foreclosure action in state court were barred by *Rooker-Feldman* because they "necessarily imply that that court was wrong in granting foreclosure and eventually confirming the sale." We review

*de novo* the district court's ruling that *Rooker-Feldman* precluded subject matter jurisdiction. *See McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006).

*Rooker-Feldman* is a combination of the abstention and *res judicata* doctrines, under which the Supreme Court's appellate jurisdiction precludes lower federal courts from engaging in what amounts to appellate review of state court proceedings. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005) (citing *Dist. Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)). A claim barred under *Rooker-Feldman* may be raised in federal court only by petition for writ of certiorari from a final judgment of the highest state court to the United States Supreme Court, pursuant to 28 U.S.C. § 1257. *See Exxon Mobil Corp.*, 544 U.S. at 283-84. The Supreme Court recently clarified the limited situation in which this doctrine applies to bar a claim in lower federal courts:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.*, 544 U.S. at 284. Although *Rooker-Feldman* prohibits district courts from hearing claims that a state court judgment was unconstitutional or violated federal law, *see McCormick*, 451 F.3d at 395, it does not "stop a district court from exercising subject-matter jurisdiction

simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobile Corp.*, 544 U.S. at 293.

Federal jurisdiction is proper if a federal plaintiff presents an independent claim, "albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (5th Cir. 1993). In the wake of *Exxon Mobile Corp.*, we recently adopted a Fourth Circuit rule to differentiate between claims attacking state-court judgments, which are barred by *Rooker-Feldman*, and independent claims, over which lower federal court have jurisdiction. The focus, we held, must be on

> . . . the source of the injury that the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick*, 451 F.3d at 393. Thus, a complaint in which the plaintiff contends he was injured by the defendants, rather than by the state court decision itself, is not barred by *Rooker-Feldman*, even if relief is predicated on denying the legal conclusion reached by the state court.

In this case, the plaintiff maintains that his injuries were caused not by the final decree of foreclosure issued by the state court but, instead, by the actions of various people involved in the mortgage foreclosure proceedings. Brown alleges wrongdoing by

the Court of Common Pleas of Montgomery County, Ohio, the attorneys involved in the mortgage foreclosure action, and the parties involved in the mortgage foreclosure action, including defendant First Nationwide.  The plaintiff asserts, for example, that First Nationwide engaged in *ex parte* communications with the judge, "used deceitful tactics to make sure that Mr. Brown was not aware of the court proceedings," and improperly modified a final judgment in the state court.

In *McCormick*, we recently examined claims similar to Brown's and concluded that federal jurisdiction was proper under such circumstances. There, the plaintiff claimed that previous state court judgments "were procured by certain Defendants through fraud, misrepresentation, or other improper means."  451 F.3d at 392.  The district court dismissed the case due to lack of subject matter jurisdiction, finding that the plaintiff's complaint was an improper appeal of a state court order.  *See id.* at 388.  On appeal, however, we reversed the ruling of the district court, holding that the source of the injury alleged was not the state court judgment itself but rather the actions of the defendants and, thus, that the plaintiff had stated independent claims to which *Rooker-Feldman* did not apply.  *See id.* at 392.

Here, Brown's allegations of fraud in connection with the state court proceedings, like those in *McCormick*, did not constitute "complain[ts] of 'injuries caused by the state court judgments,'" *id.* at 392 (quoting *Exxon Mobile Corp.*, 544 U.S. at 284), because they do not claim that the source of Brown's alleged injury is the foreclosure decree itself.

Instead, the claims concern the actions of defendant First Nationwide (and others) that preceded the decree. Therefore, Brown's claim that the mortgage foreclosure decree was procured by fraud is not barred by *Rooker-Feldman*.

Defendant First Nationwide argues that even if this claim does not assert injury from the state court judgment, it is "inextricably intertwined" with that judgment such that it should be barred under *Rooker-Feldman*. Based on the Supreme Court's clarification of *Rooker-Feldman* in *Exxon Mobil Corp.*, the Sixth Circuit recently explained the implication of the words "inextricably intertwined" in the context of the *Rooker-Feldman* doctrine: "In short, the phrase 'inextricably intertwined' only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*." *McCormick*, 451 F.3d at 394-95. Because the source of the injury asserted by Brown's complaint is the defendant's conduct, not the state court judgment, First Nationwide's argument with regard to jurisdiction must fail.

**B. Existence of Genuine Issues of Material Fact**

Even in the absence of a valid ruling under *Rooker-Feldman*, however, the findings of the magistrate judge adopted by the district court provide a sufficient basis upon which to base summary judgment in favor of First Nationwide, as well as the other two defendants, who assert that the dismissal of Brown's claims by the district court was

proper because the plaintiff failed to demonstrate that any genuine issue of material fact remained to be resolved in this litigation.

We review *de novo* the grant of summary judgment by a district court. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. *See Ciminillo*, 434 F.3d at 464.

On a motion for summary judgment, the movant bears the burden of showing that there exists no genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Nevertheless, in response to the movant's properly supported motion, the opposing party may not merely rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Although the court must read the evidence and all reasonable inferences drawn therefrom in the light most favorable to the party opposing the motion, a "mere scintilla" of evidence will not be enough to withstand summary judgment. *See Ciminillo*, 434 F.3d at 464. The opposing party must "do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In the district court, all three defendants, First Nationwide, Southeast Equity, and Homecomings Financial, filed motions for summary judgment that were referred to the magistrate judge for a recommendation to the district court. The magistrate judge issued an order explaining the requirements of Federal Rule of Civil Procedure 56 regarding motions for summary judgment, informing Brown that he could not rely merely on the claims made in his complaint, but rather that he was required to respond, with evidence "of the same quality as would be admissible at trial," showing that there existed a genuine issue of material fact with regard to each of his claims.

## 1. Defendant First Nationwide

Brown argues that the district court erred in granting summary judgment in favor of defendant First Nationwide, claiming that a genuine issue of material fact existed regarding his allegations of fraud, breach of the duty of good faith, rescission of the sale of real property, conversion, breach of a settlement agreement, and intentional infliction of emotional distress. We note initially that some of these claims are extinguished by the releases that Brown signed on July 31,1999, and May 18, 2000.

As to the claims that post-date May 2000, we have relevant evidence supplied by First Nationwide but no such rebuttal proof from the plaintiff. First Nationwide submitted

two affidavits: one, from attorney Rick DeBlassis, described the extensive litigation history between the parties and the other, provided by Donna Case-Rossato, vice president and associate general counsel for CitiMortgage, Inc., the successor-in-interest by merger to First Nationwide, detailed her personal knowledge of the case, which was gained through negotiating the settlement of litigation as well as drafting the settlement and release agreements.    In response, Brown submitted a memorandum with three documents attached: a copy of a check written on May 18, 2000, from Southeast Equity to Daniel Lee Brown for $9,708.62; a letter from Homecomings Financial to Brown dated January 15, 2002, indicating that Homecomings Financial paid $3,550.01 of Brown's property taxes on October 11, 2002; and a sworn affidavit from Brown.

Brown's attachments fail to establish a genuine issue of material fact regarding First Nationwide's alleged fraud, breach of settlement agreement, or any other wrongdoing. First Nationwide did not dispute either the check from Southeast Equity or the letter from Homecomings Financial, as both were consistent with its version of the facts.  Thus, these two documents do not "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The third attachment, Brown's affidavit, fails to meet the standard set by Federal Rule of Civil Procedure 56(e) for affidavits offered in support or opposition of a motion for summary judgment.  Under Rule 56(e), these affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

FED. R. CIV. P. 56(e). In contrast, the majority of Brown's affidavit consists of no more than unsupported allegations, such as "Daniel Brown states that First Nationwide and attorneys presented misleading facts to the court to commit fraud." Because Brown's affidavit does not meet the standard established in Federal Rule of Civil Procedure 56(e), neither it nor his other attachments provide adequate support for his memorandum in opposition to First Nationwide's motion for summary judgment. Therefore, the district court properly found that there was no genuine issue of material fact regarding any of Brown's claims against First Nationwide, and summary judgment for First Nationwide was appropriate.

## 2. Defendant Southeast Equity

Brown's claims against Southeast Equity fare no better. Southeast Equity was retained by Aames Home Loan to conduct the closing on Brown's mortgage loan with Aames Home Loan on May 18, 2000, but Southeast Equity did not negotiate the loan and made no representations to Brown concerning the terms or nature of the loan. In the district court, Southeast Equity moved for summary judgment, submitting an affidavit in support from Victoria L. Littman, the Southeast Equity employee who conducted Brown's loan closing on May 18, 2000. In response, Brown failed to present any evidence to support his memorandum in opposition, despite the court's notice informing the plaintiff that he must produce evidence to defeat a motion for summary judgment. Therefore, the district court concluded that no genuine issue of material fact existed and granted summary judgment to Southeast Equity.

On appeal, Brown contends that summary judgment was improperly granted, because the record contradicts the district court's decision with regard to his claim that Southeast Equity committed fraud by concealing documents and presenting misleading information related to the disbursement of his settlement from First Nationwide, which was to occur at the time of the closing. However, Brown presented no evidence to contradict Littman's affidavit, attached to which were various loan documents presented to Brown at the closing. In her affidavit, Littman recited that she had explained the substance of each document involved in the closing and had given Brown the opportunity to ask questions regarding the contents of each document. Specifically, Littman noted that she had reviewed the provisions regarding the interest rate of the loan, the terms of the loan, the monthly payment requirements, and the disbursement of the proceeds. Once she had reviewed each of the closing documents with Brown, Littman witnessed his signature, and after the closing, Southeast Equity provided Brown with copies of the documents he had signed.

Among the documents presented to Brown at the closing was a Housing and Urban Development (HUD) Settlement Statement prepared by Southeast Equity based on information provided by Aames Home Loan. Southeast Equity was not provided any information regarding the disbursement of the funds that differed from the terms set forth in the HUD statement. After the closing, Southeast Equity sent a check to Brown in the amount reflected in the HUD statement that Brown signed and initialed.

Hence, the uncontradicted facts establish that at the closing, Brown was shown each document, the documents were explained, and he was given the opportunity to ask questions. In addition, the terms and conditions of the loan were specifically noted in the closing documents, including the applicable distribution amounts. Brown signed the closing documents, thereby acknowledging the terms, conditions, and amounts involved. Given that the terms of the loan were explicitly stated in the loan documents, Brown did not adduce evidence that Southeast Equity committed fraud under Ohio law. Moreover, Brown supplied no evidence of the "extreme and outrageous" nature necessary to support a claim of intentional infliction of emotional distress. *See generally Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). As a result, a grant of summary judgment to Southeast Equity on both claims was appropriate.

### 3. Defendant Homecomings Financial

Brown likewise argues that summary judgment was improperly granted to Homecomings Financial, based on his contention that the company committed fraud by adding a prepayment rider to his mortgage loan without his knowledge. Brown alleged that his loan contract with Aames Home Loan lacked a prepayment penalty clause but that Homecomings Financial nevertheless "required plaintiff to make payment for two years or pay a penalty of $4,639.32." Although Brown asserted that Homecomings Financial changed the terms of the loan contract without his knowledge or consent, he presented no

evidence to rebut the affidavit of Mimi Lev, submitted by Homecomings Financial in support of its motion for summary judgment. Lev's affidavit established that Brown signed the prepayment rider on the date of the loan closing, indicating that he was aware of the existence of the rider and that he voluntarily accepted the financial obligation that it represented. Therefore, Brown failed to establish that Homecomings Financial committed fraud. Moreover, he submitted no evidence that Homecomings Financial's conduct was extreme and outrageous and therefore failed to show how Homecomings Financial committed the tort of intentional infliction of emotional distress. Accordingly, Homecomings Financial was entitled to summary judgment on this basis as well.

## CONCLUSION

For the reasons set out above, we conclude that the district court properly granted the defendants' motions for summary judgment. Although a subsequent change in the law made the district court's application of the *Rooker-Feldman* doctrine to the plaintiff's claims against First Nationwide inappropriate, summary judgment was nonetheless proper because the plaintiff failed to establish a genuine issue of material fact for trial. In addition, the district court properly granted Southeast Equity's and Homecomings Financial's motions for summary judgment because Brown did not produce sufficient evidence to establish a genuine issue of material fact concerning his claims against those parties. We therefore AFFIRM the judgment of the district court.