NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0499n.06
Filed: July 16, 2007

Case No. 06-3312

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RICKY PITTMAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| CUYAHOGA COUNTY DEPARTMENT OF | ) | DISTRICT OF OHIO |
| CHILDREN AND FAMILY SERVICES; | ) | |
| CYNTHIA HURRIE; and CYNTHIA | ) | |
| KELLER, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: KENNEDY, BATCHELDER, and CLAY, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Ricky Pittman ("Pittman") appeals the district

court's dismissal of his three claims brought under 42 U.S.C. § 1983, which allege that Defendants

Cuyahoga County Department of Children and Family Services ("CCDCFS"), Cynthia Hurrie, and

Cynthia Keller (collectively referred to as "Defendants") (1) violated his Fourteenth Amendment due

process rights, (2) violated his Fourteenth Amendment liberty interest in family relationships, and

(3) acted wantonly and recklessly during state court custody proceedings. Defendants moved for

dismissal, arguing, among other things, that the *Rooker-Feldman* doctrine deprived the district court

of subject matter jurisdiction over Pittman's claims. The district court agreed and dismissed

Pittman's claims with prejudice. Pittman appeals the dismissal, arguing that *Rooker-Feldman* does

not apply to his claims. We agree with Pittman, **REVERSE** the district court's decision, and

**REMAND** for further proceedings consistent with this opinion.

**I.**

Ricky Pittman is the biological father of Najee Waters ("Najee"). When Najee was only a few months old, CCDCFS filed a motion for temporary custody with the Cuyahoga County Juvenile Court. In that motion, CCDCFS highlighted the faults of both parents, noting that Najee's mother, Latarra Waters, was a drug addict who had abandoned the child, and Najee's father, Pittman, could not be found, had not established paternity, did not provide care or support for the child, and failed to visit the child on a regular basis. Pittman contends that CCDCFS's representations about him were false. CCDCFS attempted to correct some of these erroneous representations by filing a supplemental document with the juvenile court acknowledging that Pittman actually had established paternity, was providing financial support for the child, and was unable to visit the child because of interference by the mother. Despite these more favorable representations of Pittman, the juvenile court granted temporary custody of Najee to CCDCFS.

CCDCFS then filed an application with the juvenile court seeking permanent custody of Najee. In that application, CCDCFS stated that Pittman failed to visit Najee for more than three months and that Pittman agreed CCDCFS should have permanent custody of Najee. Pittman contends that these assertions are patently false. A few months later, CCDCFS withdrew the application for permanent custody, seeking instead to vest legal custody of Najee in his great aunt and uncle. The juvenile court held two hearings on the issue of legal custody; Pittman was served by publication, but was not personally notified of the hearings. As a result, he did not attend either of the hearings, and the juvenile court granted legal custody to Najee's great aunt and uncle.

Over a year later, Pittman filed a motion for modification of custody with the juvenile court.

Najee's guardian ad litem filed a motion to dismiss, arguing that the court lacked jurisdiction because Pittman filed his motion more than a year after custody proceedings had concluded. The court agreed with the guardian ad litem and dismissed Pittman's motion for modification of custody; the Ohio Court of Appeals affirmed that decision.

While Pittman's appeal was still pending in state court, he instituted these proceedings in federal district court. In the first two counts of his complaint, Pittman alleges that CCDCFS's "failure to award custody of Najee and to even consider [Pittman] for custody, despite his being ready, willing[,] and able to parent Najee," violates his Fourteenth Amendment due process rights and liberty interest in family matters. In the third count, he asserts that CCDCFS acted wantonly, recklessly, in bad faith, and with a malicious purpose by falsely representing information to the juvenile court and other county officials in order to "completely cut him out of the [custody] process." Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), presenting eight separate bases for dismissal. The district court granted Defendants' motion to dismiss, finding that the *Rooker-Feldman* doctrine deprived it of subject matter jurisdiction over Pittman's claims. The court did not address Defendants' other bases for dismissal. On appeal, Pittman argues that the district court erred in applying *Rooker-Feldman* to dismiss his claims.

## II.

We review *de novo* a district court's ruling that the *Rooker-Feldman* doctrine deprived it of subject matter jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006). Generically stated, the *Rooker-Feldman* doctrine stands for the unremarkable proposition that a federal district court lacks subject matter jurisdiction to review a state court decision. *Id.* (stating that "a district court [cannot] exercise appellate review of a state court decision"). The doctrine

3

originally derived from the two Supreme Court cases bearing its name. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In the years following the *Feldman* decision, the lower courts gradually expanded the doctrine's amorphous application until, recently, the Supreme Court issued its decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), clarifying and restricting the doctrine's scope. The *Exxon* decision stressed the "narrow" and "limited" application of the doctrine, holding that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. The doctrine does not prevent "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction" because *Rooker-Feldman* does not apply. *Id.* (quotations omitted).

In the wake of *Exxon*, this circuit has tightened the scope of *Rooker-Feldman*. *See Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006) ("*Rooker-Feldman* is a doctrine with only limited application"). In formulating a cogent post-*Exxon* analysis, we have distinguished between plaintiffs who bring an impermissible attack on a state court judgment — situations in which *Rooker-Feldman* applies — and plaintiffs who assert independent claims before the district court — situations in which *Rooker-Feldman* does not apply. *McCormick*, 451 F.3d at 393. In delineating this distinction, we noted:

> The inquiry [focuses on] the *source of the injury* the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.* (emphasis added); *see also Coles*, 448 F.3d at 858 (noting that we "have taken the Supreme Court's guidance on the application of *Rooker-Feldman* and applied the doctrine only when a plaintiff complains of injury from the state court judgment itself").

We conclude that none of Pittman's claims are barred by *Rooker-Feldman*. In the first two counts of his complaint, Pittman alleges that Defendants violated his due process rights and his liberty interest in family matters by refusing to give or even to consider giving him custody of his child. Defendants, as a children services agency and employees thereof, are required by state statute to prepare a case plan for any child to whom the agency is providing services, *see* Ohio Rev. Code § 2151.412(A), and to consider, as part of that plan, whether the child should be placed with his biological parents, *see* Ohio Rev. Code § 2151.412(G)(1). Defendants' evaluation of whether a child can be placed with his parents is independent from the juvenile court's decision to award custody. *See* Ohio Rev. Code § 2151.23(A)(2). We read Pittman's first two claims as challenging Defendants' refusal to recommend that he be given custody of Najee, rather than as a challenge to the juvenile court's judgment awarding custody to Najee's great aunt and uncle; after all, the actual award of custody was not the prerogative of Defendents, but that of the juvenile court. *See id.* Pittman's third claim similarly challenges Defendants' conduct, asserting that Defendants acted wantonly, recklessly, in bad faith, and with a malicious purpose by falsely representing information to the juvenile court and other county officials in order to "completely cut him out of the [custody] process." As relief for these claims, Pittman seeks compensatory damages and a declaratory

judgment stating that Defendants' actions violated the Fourteenth Amendment; Pittman does not seek custody of Najee or otherwise request a reversal of the juvenile court's decision. All three of Pittman's claims focus on Defendants' actions, rather than the outcome of the state court custody proceedings. We therefore conclude that the source of Pittman's alleged injury is Defendants' actions, not the state court judgment. Because Pittman does not complain of an injury caused by a state court judgment, we find that he is asserting independent claims, which are not barred by *Rooker-Feldman*.

Our post-*Exxon* decisions confirm that *Rooker-Feldman* does not bar a federal-court challenge to an individual's improper conduct during a prior state court proceeding. In *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 436-37 (6th Cir. 2006), the plaintiff brought a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1691 *et seq.*, complaining that the defendant had submitted a false affidavit in a state court garnishment proceeding. The court concluded that *Rooker-Feldman* did not apply because the plaintiff complained of harm caused by the defendant's false affidavit, not by the state court's decision in the garnishment proceedings. *Id.* at 437. Similarly, in *McCormick*, the court found that *Rooker-Feldman* did not bar the plaintiff's claims that the defendant (1) committed fraud and misrepresentation in state court divorce proceedings, (2) committed an abuse of process in the divorce proceedings, and (3) intentionally excluded the plaintiff as a party to state court receivership proceedings in order to prevent the plaintiff from asserting an interest in property. *McCormick*, 451 F.3d at 392. In holding that *Rooker-Feldman* did not apply, the court noted:

> None of these claims assert an injury caused by the state court judgments; Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law. Instead, Plaintiff asserts *independent claims* that those state

6

court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means[.]

*Id.* Finally, in *Brown v. First Nationwide Mortgage Corp.*, No. 05-3597, 2006 WL 3289232, at *3-4 (6th Cir. November 9, 2006), the plaintiff "maintain[ed] that his injuries were caused not by the final decree of foreclosure issued by the state court but, instead, by the actions of various people involved in the mortgage foreclosure proceedings." *Id.* at *3. Relying on our decision in *McCormick*, we reasoned:

> [The plaintiff's] allegations of fraud in connection with the state court proceedings, like those in *McCormick*, did not constitute complaints of injuries caused by the state court judgments, because they do not claim that the source of [the plaintiff's] alleged injury is the foreclosure decree itself. Instead, the claims concern the actions of defendant[s] . . . that preceded the decree. Therefore, [the plaintiff's] claim that the mortgage foreclosure decree was procured by fraud is not barred by *Rooker-Feldman*.

*Id.* at *4 (quotations and citations omitted).

As did the plaintiffs in *Todd*, *McCormick*, and *Brown*, Pittman challenges Defendants' allegedly improper conduct, rather than the outcome of the state court proceedings. Relying on these cases, we conclude that Pittman's claims are not barred by *Rooker-Feldman* because he is complaining of an injury caused by a third party, not a state court judgment. *See also Holloway v. Brush*, 220 F.3d 767, 778-79 (6th Cir. 2000) (en banc) (finding, in a pre-*Exxon* case, that *Rooker-Feldman* did not bar a § 1983 action for monetary damages against a county and an individual social worker).

Defendants assert that Pittman's claims should be dismissed under *Rooker-Feldman* because they are "inextricably intertwined" with issues decided in the state court custody proceedings. Even though pre-*Exxon Rooker-Feldman* analysis employed the "inextricably intertwined" analysis, *see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *Executive Arts Studio,*

7

*Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004), we have since abandoned this "inextricably intertwined" analysis. In *McCormick*, we noted that "inextricably intertwined" is not a separate legal test used to extend *Rooker-Feldman*'s scope; rather, it merely "describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*." *McCormick*, 451 F.3d at 394-95 (citing *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 86-87 (2d Cir. 2005)); *see also Brown*, 2006 WL 3289232, at *4. We are thus not persuaded by Defendants' arguments.

The district court did not have the benefit of our decisions in *Todd*, *McCormick*, and *Brown* when it undertook its *Rooker-Feldman* analysis. That precedent, however, requires that we reverse the district court's decision. We pause to acknowledge that, if Pittman were to prevail on the merits of his federal claims, it is unclear what impact his success in this federal lawsuit would have on the underlying state court judgment. Without expressing an opinion on the matter, we recognize that this is an inevitable byproduct of the Supreme Court's confining the scope of *Rooker-Feldman* in *Exxon Mobile*, 544 U.S. at 284.

### III.

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.