RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0152p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

NANCY KOVACIC; KATHERINE
KOVACIC, a minor, by and through her
Mother, Nancy Kovacic, her guardian and
legal custodial parent; DANIEL KOVACIC,
a minor, by and through his Mother, Nancy
Kovacic, his guardian and custodial parent,
            *Plaintiffs-Appellants,*

            v.

CUYAHOGA COUNTY DEP'T OF CHILDREN
AND FAMILY SERVICES; CUYAHOGA COUNTY,
OHIO; PATRICIA CAMPBELL PONSTINGLE;
PAM CAMERON; VIKKI CSORNOK; PAM
GAYLORD,
            *Defendants-Appellees*.

No. 08-4656

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-02746—Sara E. Lioi, District Judge.

Argued: March 11, 2010

Decided and Filed: May 26, 2010

Before: MERRITT, COOK, and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Kenneth D. Myers, LAW OFFICES, Cleveland, Ohio, for Appellants. Steven W. Ritz, CUYAHOGA COUNTY PROSECUTOR'S OFFICE, Cleveland, Ohio, for Appellees. **ON BRIEF:** Kenneth D. Myers, LAW OFFICES, Cleveland, Ohio, for Appellants. Shawn M. Mallamad, CUYAHOGA COUNTY PROSECUTOR'S OFFICE, Cleveland, Ohio, for Appellees.

_____

**OPINION**

_____

**I.**

MERRITT, Circuit Judge.  Plaintiff, Nancy Kovacic, brought this action on behalf of herself and her minor children claiming that their constitutional rights were violated when social workers from the Cuyahoga Department of Children and Family Services, aided by several North Olmsted police officers, entered her home by force and removed her two children, Daniel and Katherine. The children were placed in the temporary custody of the County and were not returned home for 10 months.  Based on this conduct, plaintiffs claim that defendants violated the United States Constitution and other federal laws, as well as Ohio law.  The primary bases for plaintiffs' claims are that the social workers relied on false information from third parties to effectuate the removal and that the subsequent juvenile court proceedings concerning the removal failed to comport with due process.  Plaintiffs also claim that it was error for defendants not to obtain a warrant or other prior judicial approval before removing the children from their mother's custody.  More than two and one-half years elapsed between the removal of the children and the commencement of this action in federal court.

The district court did not reach the merits of any of the claims.  It found the mother's claims barred by the two-year statute of limitations in Ohio for Section 1983 actions and state law tort claims.  The district court then dismissed the children's federal claims under the *Rooker-Feldman* doctrine, finding that the alleged unlawful conduct of Family Services and its social workers was "intertwined" with issues decided by the state-court, thereby barring the district court from hearing the merits of the claims.  The district court has not made findings or conclusions on the merits of the constitutional claims, and we must review the factual allegations in the light most favorable to plaintiffs.

Defendant police officers and the City of North Olmsted subsequently settled with plaintiffs, leaving only Cuyahoga County and four social workers who work for the County Department of Children and Family Services as parties to this appeal.  The appeal raises two

main issues: (1) whether the district court erred in dismissing all of Nancy Kovacic's claims on statute of limitations grounds, and (2) whether the district court erred in finding it lacked jurisdiction over the children's claims under the *Rooker-Feldman* doctrine.

For the reasons discussed below, we affirm the judgment of the district court's dismissal of Nancy Kovacic's claims on statute of limitations grounds. We remand the children's claims to the district court because their federal claims are not barred by *Rooker-Feldman* and the district court has jurisdiction to hear their claims.

## II.

Plaintiff, Nancy Kovacic, divorced her husband, Tom, in 1999. The couple have two children, Katherine and Daniel, who are also named plaintiffs and were minors at the time of their removal from their mother's care in 2002. Nancy had sole legal custody of the children at the time of their removal, but she and her husband were locked in a bitter custody dispute. The Cuyahoga County Department of Children and Family Services and the North Olmsted Police Department had involvement with the family over the years before the removal of the children because Tom and Nancy had accused each other of physical abuse of the children. In particular, after the divorce, Tom's family, including his sister and father, had called the police and Family Services complaining that Nancy was unstable, as well as physically and mentally abusive to her children. Nancy disputes these allegations and claims that Tom's family made false accusations against her so that Tom could gain custody of the children. At the time of the children's removal, the family had been taking part in a county-supervised intervention plan aimed at helping the family to work out problems without violence and conflict.

On March 22, 2002, social worker Patricia Campbell Ponstingle, a defendant in this case, scheduled a "staffing" meeting concerning the Kovacic situation for four days hence – March 26, 2002. A staffing meeting is designed to address family issues in an informal setting and explore possible counseling and therapeutic services available to troubled families. The purpose of this meeting was to discuss specific allegations of physical and emotional abuse occurring within the Kovacic family. One of the stated goals of the meeting was to keep the family intact and there was no discussion or contemplation at that time of

removing the children from their mother's care.   The staffing meeting was allegedly rescheduled for March 27, 2002, because, according to Family Services, Nancy could not be present on the 26th.  She disputes this and claims that she was called on March 26 and told the meeting had been rescheduled to the next day.  Whatever the case, Tom Kovacic, his father Ed,[1] his sister Colleen and three officers from the North Olmsted police department showed up at Family Services on March 26 to participate in the staffing meeting.  The officers claim they were attending in response to subpoenas issued by Tom Kovacic directing them to attend the meeting.  Social worker Ponstingle testified that she and her supervisors, Pam Cameron and Vikki Csornok, met with Tom, his family members and the police as a "professional courtesy," despite the fact that the mother was not present.

During this meeting, Tom and his family members and the police told the social workers that Nancy's abuse and neglect toward the children was "escalating" and they felt the children were in "imminent risk" of physical harm if they stayed with her.  The police officers present at the meeting told Family Services that the mother was acting "more agitated" and "more prone to impulsive behavior" and had the potential to be violent.  They also pointed to six police reports concerning her, filed between 1995 and February 28, 2002, a month before the meeting took place.  The incidents primarily concerned disputes between Nancy and her ex-husband Tom, or between Nancy and her sister-in-law, Colleen.  Based on these reported incidents, the officers stated their belief that Nancy had the potential for violence.  She claims all of these allegations are false and each could have been rebutted or explained had she been given the opportunity to do so.

The record reflects that based primarily on the information received from the North Olmsted police officers and, to a lesser extent, the information from Tom Kovacic and his relatives,  Family Services determined that the children were at a "greater risk

---

[1] Ms. Kovacic claims that the police in her community of North Olmsted were biased in favor of Tom Kovacic and his family due to Ed Kovacic's former position as Police Chief in neighboring Cleveland.

level" and the danger to the children was more "imminent" than they first thought, necessitating immediate removal of the children from their mother. With the approval of her supervisors, Vikki Csornok and Pam Cameron, social worker Ponstingle procured a Temporary Emergency Care Order, which provides legal authority for Family Services to intervene as "officers of the court" and to bring the case immediately under the Juvenile Court's supervision. *See* O.R.C. § 2151.31. The Temporary Emergency Care Order was authorized by a Standing Order signed by an Administrative Judge of the Cuyahoga County Juvenile Court on December 13, 1988, 13 years prior to the removal that instigated this lawsuit. The Standing Order, in conjunction with O.R.C. § 2151.31, allowed County social workers to remove children temporarily from a parent's custody without a warrant or other prior judicial approval in situations where Family Services reasonably believed the children faced "imminent risk" of harm. Pre- and post-removal procedures were also included in the Standing Order to safeguard children and parents, such as review of the removal order by a County Assistant Prosecuting Attorney familiar with the case before removal to ensure that the removal met all legal requirements, and the requirement of the filing of a Complaint for Temporary Custody by Family Services by the next business day after removal, as well as a procedure for holding a "probable cause for removal" hearing before a juvenile court magistrate within 72 hours of the removal. *See also* O.R.C. § 2151.31.

The record reflects that the procedures outlined in the Standing Order and O.R.C. § 2151.31 were followed before the children were removed from their home and their mother's custody. Before obtaining a Temporary Emergency Care Order, Ponstingle first discussed the safety factors and risk situation to the children with the assigned assistant prosecuting attorney for Cuyahoga County, Cheryl Rice-Lane, who was then required to determine whether the statutory standards, guidelines and mandates in place had been met before signing the Temporary Emergency Care Order.

In possession of a valid Temporary Emergency Custody Order, Ponstingle and social worker Susan Peavey, who was not a named defendant in the suit, following the usual custom of their agency, asked the North Olmsted police for help in removing the

children from their mother's home. Upon arriving at Nancy's home, a North Olmsted police officer attempted to persuade her to voluntarily let the police in, but she refused. Defendants concede that the police "forced the front door in" to gain access to the children. After police entered the house, social worker Ponstingle followed and Daniel and Katherine were turned over to Family Services by their mother without further incident. The children were taken to a local hospital for a routine examination, which found no signs of abuse or neglect by the mother. Then the children were placed with the husband's side of the family, namely with Colleen Kovacic-Nola, Tom Kovacic's sister and the children's aunt.

As required by Ohio law, a Complaint for Temporary Custody was filed the next day, March 27, 2002, with the County Juvenile Court by an assistant prosecuting attorney on behalf of Family Services. The Complaint sought temporary custody of the children for the County based on abuse and neglect by both parents. *See* O. R. C. § 2151.353(A)(2) (authorizing Ohio's juvenile courts to award temporary custody of neglected children to a public services agency). The affidavit accompanying the Complaint was sworn by social worker Ponstingle, who acknowledged at her deposition that the factual assertions in the affidavit were based on information given to her by the North Olmsted police, Tom Kovacic, his sister, Colleen Kovacic Nola, and the children. She did not conduct an independent investigation of the facts in the affidavit. Two days later, on March 29, 2002, in accordance with Juvenile Court procedures, the Juvenile Court, a division of the Court of Common Pleas of Cuyahoga County, conducted a "shelter hearing." A shelter hearing is emergency in nature and not intended to be a full adjudication of rights, but instead a judicial review of whether Family Services had probable cause to remove the children and place them in the temporary care of the County. *See* O.R.C. § 2151.31. Nancy was present at the hearing and represented by counsel, although neither she nor any of the witnesses she had brought was permitted to testify. Social worker Ponstingle and two North Olmsted police officers testified. Following the hearing, the presiding magistrate determined that the emergency removal was justified. *In re: Daniel and Katherine Kovacic*, No. 0291-247/248, (Ct. of Common

Pleas, Juv. Ct. Div., Cuyahoga County, Mar. 29, 2002). The magistrate issued an order granting temporary custody of the Kovacic children to Family Services based on a finding of probable cause of imminent risk of child abuse and neglect. *Id.* The children then spent 10 months in foster care under the custody of the County. No one appealed or otherwise filed any written objections to this order. This action was filed more than two and one-half years later.

The magistrate's March 29 Order awarding temporary custody to the County is appealable. *In re Murray*, 52 Ohio St. 3d 155, 556 N.E.2d 1169 (1990) (an adjudication by a juvenile court that a child was dependent, followed by a disposition awarding temporary custody to a public children services agency constituted a final, appealable order). It is undisputed that Nancy did not appeal or file written objections to the temporary custody order as was her right under Ohio law. Following an award of temporary custody, the Juvenile Court, in conjunction with Family Services, is to try to reunify the family or, if that cannot occur, issue an order of permanent custody.[2] Two hearings were held in August and October 2002, but there is no record or discussion of what transpired. However, it is undisputed that the children were returned to their mother's custody in January 2003, so it is reasonable to assume that she was "reunified" with her children. Upon motion by her, the complaint for temporary custody was ultimately dismissed by the Lake County Juvenile Court (the county to which Nancy had moved in the interim) on November 7, 2003. *In re Kovacic Children*, No. 2003-NG-1481 (Ct. Comm. Pl., Juv. Div., Lake Cty., Ohio Nov. 7, 2003).

Nancy, individually and on behalf of her minor children, commenced an action in state court on August 17, 2004, which was voluntarily dismissed by plaintiffs on November 8, 2005. The federal suit on appeal here was filed in district court on

---

[2]The relevant Ohio statute provides, in part, a "public children services agency . . . shall prepare and maintain a case plan for any child to whom the agency is providing services;" this applies, for example, when, as in this case, that agency has temporary custody of the child. O. R. C. § 2151.412(A)(2). Day-to-day responsibility for that case plan's management is in the hands of the caseworker. *Id.* at § 2151.416(B)(1). In such a situation, the agency preparing the case plan "shall attempt to obtain an agreement among all parties, including, but not limited to, the parents, guardian, or custodian of the child and the guardian ad litem of the child regarding the content of the case plan." *Id.* at § 2151.412(D).

November 28, 2005, and then amended on March 17, 2006. The complaint asserts federal claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, including a claim for a Fourth Amendment violation for illegal entry into the home; procedural and substantive due process claims for wrongfully taking the children from the home and keeping them from their mother; a liberty interest claim; a *Monell* claim for illegal entry into the home and the removal of the children based on a municipal policy or custom state claims. The state claims include presenting false information to county officials with malicious purpose, in bad faith and with wanton or reckless disregard, civil conspiracy, and intentional infliction of emotional distress.

Defendants moved for summary judgment on all claims, which was granted in part and denied in part by the district court. *Kovacic v. Cuyahoga Cty. Dep't of Child. and Fam. Servs.*, No. 1:05CV2746, 2007 WL 2027326 (N.D. Ohio July 9, 2007). The district court dismissed all of the mother's claims as barred by statutes of limitation. As to the children's claims, the district court found all but the Fourth Amendment claim for illegal entry into the Kovacic home barred by the *Rooker-Feldman* doctrine. The district court denied qualified immunity to social worker Patricia Campbell Ponstingle on the illegal entry claim. Ponstingle filed an interlocutory appeal with this Court, which was settled and subsequently dismissed. Order, No. 07-4005 (filed Oct. 24, 2008). During the pendency of the interlocutory appeal, the parties reached a settlement in the district court as to the children's Fourth Amendment claims against the City of North Olmsted and the police officers concerning the illegal entry and the claim was voluntarily dismissed by plaintiffs. Notice of Dismissal (filed Feb. 22, 2008). The children did not appeal the dismissal of their state law claims or the federal conspiracy claim. Therefore, the only claims left on appeal are all of Nancy's claims, which were dismissed on statute of limitations grounds, and the children's constitutional claims related to the alleged unlawful removal.

**III. Discussion**

**A.** ***The District Court Correctly Ruled That All of Nancy Kovacic's Claims Are Time Barred***

We review de novo the district court's determination that Nancy untimely filed her claims. *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009). To reach this conclusion, the court enforced a two-year statute of limitations. Because neither party challenges the court's use of the two-year limitations period, we apply it here. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006) ("[A]n appellant abandons all issues not raised and argued in its initial brief on appeal[,]" and "it is a settled appellate rule that [a party forfeits] issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (internal quotation marks and citations omitted).

Nancy's actions in both state and federal court were filed more than two and one-half years after the children were removed. Her complaint in state court was filed August 14, 2004; therefore, her claims must have accrued no earlier than August 14, 2002. The district court found that the last act that precipitated the alleged constitutional violation occurred on March 29, 2002, when the juvenile court magistrate concluded that there was probable cause for placing the children under the temporary care of Family Services for abuse and neglect, an action from which no appeal or other judicial action was taken for more than two years. Nancy disagrees with the district court, arguing that any one of several later dates is the date on which her action accrued.

Generally, the statute of limitations begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997). The basis of Nancy's lawsuit is the unlawful removal of her children from her home on March 26, 2002. The defendants contend that, at the latest, the last act that forms the basis for the claims in the complaint occurred on March 29, 2002, when her children were put in the temporary care of the County after the Juvenile Court hearing. Regardless of whether we use the March 26 or March 29 date, the complaint filed by Nancy with the state court on August 17, 2004,

is well outside the two-year limitations period for all her claims and is, therefore, untimely.

To counter the clear untimeliness of her complaint, Nancy contends that there was a "continuing violation" of her rights each day that her children were out of her custody and that the violation did not end until they were returned to her home in January 2003, which would have given her until January 2005 to file a complaint. Alternatively, she argues that her cause of action did not accrue until the Complaint for Temporary Custody was dismissed by the Lake County court on November 7, 2003, because until that order was filed she did not have full  legal custody of her children restored.

There is no need for extensive analysis on this issue.  Nancy concedes that the precipitating event in this action was the initial removal of her children from her custody on March 26, 2002.  A continuing violation in a § 1983 action occurs when there are continued unlawful acts, not by continued ill effects from the original violation. *McCune v. The City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988).  We have held in a similar case that "mere inaction" on a temporary custody petition is not enough to find a continuing violation. *Eidson v. State of Tenn. Dep't of Children's Sevs.*, 510 F.3d 631, 637 (6th Cir. 2007).

As for the alternative argument that her claim did not accrue until it was dismissed in November 2003, resolution of the claims in her complaint was not dependent on a final determination of her custody case.  If, as Nancy claims, the removal was unlawful, it remained unlawful regardless of the final disposition of her case, whether in her favor or not.  While there was perhaps some chance that a federal court would have abstained or held her case in abeyance pending final resolution of the state custody case, this does not toll or otherwise change the date of the accrual of her claims and she makes no tolling argument.  We affirm the district court's dismissal of all of the claims brought by Nancy Kovacic.

**B.** ***The Claims by Daniel and Katherine Kovacic Are Not Barred by Rooker-Feldman***

The district court held that the children's claims were not time barred because they were minors at the time of the events herein. The district court, however, found all of the children's claims barred by the *Rooker-Feldman* doctrine. We review *de novo* a district court's ruling that the *Rooker-Feldman* doctrine deprives the district court of jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006). For the following reasons, we disagree and remand to the district court the claims brought by the children (except for the Fourth Amendment claim that was settled with the North Olmsted police).

The *Rooker-Feldman* doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a).[3] *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923). The statute is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision. To accomplish this, the statute states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." The *Rooker-Feldman* doctrine, as it has become known, is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not occur in the lower federal courts.

---

[3]28 U.S.C. § 1257(a) reads as follows:

Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

The Supreme Court recently revisited *Rooker-Feldman* in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005). In *Exxon,* the Supreme Court summarized the *Rooker-Feldman* doctrine this way:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284. In the wake of *Exxon,* our Court, along with others, has tightened the scope of *Rooker -Feldman*. *See, e.g., Coles v. Granville,* 448 F.3d 853, 857 (6th Cir. 2006) ("*Rooker Feldman* is a doctrine with only limited application."). In post- *Exxon* analysis, we have distinguished between plaintiffs who bring an impermissible attack on a state court judgment – situations in which *Rooker-Feldman* applies – and plaintiffs who assert independent claims before the district court – situations in which *Rooker - Feldman* does not apply. *See, e.g., Pittman v. Cuyahoga Cnty. Dep't of Children and Fam. Sevs.,* 241 F. App'x 285 (6th Cir. 2007); *McCormick v. Braverman,* 451 F.3d 382, 393 (6th Cir. 2006); *Todd v. Weltman, Weinberg, & Reis Co., L.P.A.,* 434 F.3d 432, 436-37 (6th Cir. 2006) (holding *Rooker- Feldman* not triggered because the plaintiff did not allege that he was injured by the state-court judgment, but instead filed an independent federal claim that he was injured by the defendant's filing of a false affidavit in the state-court proceeding).

In *McCormick,* we explained that the pertinent inquiry after *Exxon* is whether the "source of the injury" upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is "inextricably intertwined" with the state-court judgment:

> The inquiry [focuses on] the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, *such as a third party's actions*, then the plaintiff asserts an independent claim.

. . .

> To the extent that Defendants argue that these claims, even though they do not assert injury from the state court judgments, are "inextricably intertwined" with those judgments so as to fall within the reach of *Rooker-Feldman,* that argument must fail. We first note that it was this exact language that was the source of the pre- *Exxon Mobil* woes as to the application of *Rooker-Feldman*. In addition, the Supreme Court used the phrase "inextricably intertwined" in *Feldman* to describe a claim where the plaintiff asserted an injury from the state court judgment itself. . . . In *Exxon,* the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase "inextricably intertwined" to extend *Rooker-Feldman* to situations [where] the source of the injury was not the state court judgment. *In short, the phrase "inextricably intertwined" only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by Rooker-Feldman.*

451 F.3d at 394-95 (emphasis added). Applying this distinction, we concluded in *McCormick* that the plaintiff's claims that certain defendants committed fraud and misrepresentation in the course of state probate proceedings did not allege an injury caused by the state court judgment and thus were not barred by *Rooker-Feldman. Id.* at 392.

We applied the "source of the injury" analysis in a case with facts similar to this one concerning the same defendant – Cuyahoga County Department of Children and Family Services – involving a temporary custody proceeding in the juvenile court where defendants argued that *Rooker-Feldman* barred the district court's jurisdiction. In *Pittman v. Cuyahoga Cnty. Dep't of Children and Fam. Sevs.,* 241 F. App'x 285 (6th Cir. 2007), plaintiff brought claims of improper conduct by employees of a family services agency that the district court found were barred by *Rooker-Feldman*. We reversed, holding that plaintiff challenged defendants' improper conduct in prohibiting him from seeing his child, rather than the outcome of the state-court proceeding. *Id.* at 288.

Like the plaintiffs in this case, the plaintiff in *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002), brought suit against defendants in the child neglect office based on a conspiracy to take away her children. The Seventh Circuit held that *Rooker-Feldman*

did not bar her claims. Significantly, and similarly to the case at bar, Brokaw alleged that "the defendants conspired – prior to any judicial involvement – to cause false child neglect proceedings to be filed." *Id.* at 665. The Seventh Circuit specifically held that the plaintiff "is not merely claiming that the decision of the state court was incorrect or that the decision violated her constitutional rights; rather, she is alleging that the people involved in the decision to forcibly remove her from her home and her parents and subject her to the custody of [child services] violated her constitutional rights, independently of the state court decision." *Id.* That is precisely what Daniel and Katherine Kovacic have alleged herein.

As with the cases noted above, the children's claims in this case do not seek review or reversal of the decision of the juvenile court to award temporary custody to the state, but instead focus on the conduct of Family Services and of the social workers *that led up to* the juvenile court's decision to award temporary custody to the County. They seek compensatory damages for alleged unconstitutional conduct by a government agency, not injunctive or other equitable relief, because any action concerning their return to their mother's custody became moot when they were reunited with their mother in January 2003 and the Juvenile Court complaint was dismissed in 2005. The conduct complained of primarily consists of Family Services' alleged failure to undertake an independent review of the situation before removing the children from the home and triggering the Juvenile Court proceedings based on the uncorroborated and unverified information from third parties received in an *ex-parte*, informal meeting.

Using the analysis from *Exxon*, we conclude that the district court erred in relying on *Rooker- Feldman* when it declined to exercise jurisdiction over the case and hear the merits of the children's claims. The district court did not mention the Supreme Court's decision in *Exxon* and its "source of the injury" test, and it may be that the parties did not call the district court's attention to the case. Instead, the court below looked to whether the state-court judgment was "intertwined" with issues raised in the federal complaint.

For the foregoing reasons, the judgment of the district court as to the federal constitutional claims by Daniel and Katherine Kovacic is reversed and remanded to the district court for proceedings consistent with this opinion. As to plaintiff Nancy Kovacic, we affirm the judgment of the district court in dismissing all of her claims.