NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0481n.06
Filed: June 8, 2005

**No. 04-5208**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


NORBERT ROCH; REGINA ROCH;
ELAINE ROCH; and LORRAINE ROCH,

 **Plaintiffs-Appellants,**

v.

HUMANE SOCIETY OF BEDFORD
COUNTY, TENNESSEE, INC.; KAY PETTY,
individually and in her capacity as president of
the Bedford County Humane Society, Inc.;
BEDFORD COUNTY, TENNESSEE; LARRY
ROBINS, SR.; JOHN DOE; and JANE DOE,

 **Defendants-Appellees.**

_____/

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**


**BEFORE: CLAY and SUTTON, Circuit Judges; O'MEARA, District Judge.[*]**

 **CLAY, Circuit Judge.** Plaintiffs Norbert, Regina, Elaine, and Lorraine Roch ("Rochs")

appeal from multiple orders entered by the district court granting summary judgment to all

Defendants and dismissing in its entirety this civil rights action brought pursuant to 42 U.S.C. §

1983. Because we agree with the district court's conclusion that the Rochs' claims are entirely

without merit, we **AFFIRM** the grant of summary judgment in favor of Defendants.

_____

 [*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District
of Michigan, sitting by designation.

## I.   BACKGROUND

In May 2001, Tennessee and federal authorities learned that the Rochs were keeping a large number of domestic and exotic animals in inhumane conditions on their property, including, but not limited to, livestock, an unknown number of monkeys, a raccoon, a fox squirrel, two grackles, two starlings, a robin, a cardinal, and more than 175 dogs.  The state filed criminal charges against the Rochs, alleging more than 250 violations of Tennessee law including animal cruelty, theft of property, disorderly conduct, resisting arrest, and illegal possession of native wildlife.  Lorraine Roch pleaded guilty to the latter charge, and received a suspended sentence of 11 months and 29 days imprisonment, plus a $250 fine.  Additionally, each of the Rochs entered into a "Memorandum of Understanding" pursuant to Tennessee Code Ann. § 40-15-105, agreeing to pay a $5,000 fine and court costs on one criminal warrant, and additionally promising "not to obtain any more animals in the State of Tennessee" and to "forfeit any interest they may have in all animals previously seized by the Bedford County Humane Society."

While the criminal charges against the Rochs were still pending, the State of Tennessee and the Shelbyville-Bedford County Humane Association ("SBCHA") filed a joint civil petition for relief against the Rochs, requesting a state court hearing to establish a plan of care for animals on the Roch property.  The court issued an *ex parte* order granting the SBCHA the authority to "enter the Roch premises and to inspect the condition of the animals impounded there and to take any action reasonably necessary to interfere [and] to prevent the perpetration of any act of cruelty on any animal."  Several days later, SBCHA volunteers, accompanied by members of the Bedford County

Sheriff's Department, entered the Rochs' property and began to remove animals. By the following month, over 100 dogs had been removed from the Rochs' farm and were either placed with adoptive families or kept at the SBCHA's shelter.

On July 26, 2001, a hearing was then held in state court to determine the fate of 51 dogs that remained in the Rochs' possession. Dr. Elizabeth Shull, a veterinarian who visited the Rochs' property testified that due to the deplorable conditions in which the dogs had been housed, it was unlikely that the animals could be rehabilitated; consequently, Dr. Shull recommended that the animals be euthanized. Other witnesses testified about the inhumane conditions on the premises, as well as the dangers to human health presented by the large amount of fecal waste and deceased animal carcasses littering the Rochs' property. The Rochs were represented by counsel during the entire state court proceedings, and their counsel had an opportunity to cross-examine all of the state's and the SBCHA's witnesses at the July 26 hearing. Following the hearing, the parties entered into an agreement by which the Rochs would be allowed to keep the remaining dogs, subject to their promise to properly care for the animals.

By mid-September 2001, the parties were back in court, and the state and the SBCHA presented evidence that the Rochs had made little or no effort to provide proper care for the remaining dogs. The state court issued a written opinion and order on September 28, 2001, concluding that the Rochs had perpetuated acts of cruelty on the dogs on their premises, and granting the SBCHA the authority to remove and dispose of all dogs still on the Rochs' farm. The court issued a subsequent order setting a time for the SBCHA to take possession of the remaining dogs. The Rochs appealed this order to the Court of Appeals of Tennessee, which denied the appeal. On

3

October 20, SBCHA volunteers euthanized the 51 remaining dogs. Additionally, upon noting the deplorable and dangerously unhealthy condition of the Rochs' livestock, the SBCHA also removed approximately 39 goats, sheep, donkeys, and cattle.

On May 3, 2002, the Rochs filed the instant lawsuit pursuant to 42 U.S.C. § 1983, alleging that the SBCHA's seizure of animals from their property constituted an unreasonable seizure in violation of the Fourth Amendment, a governmental taking without just compensation in violation of the Fifth Amendment, and trespass and conversion under state tort law. The Rochs also included a cause of action for intentional infliction of emotional distress under Tennessee law. Defendants moved for summary judgment, and the district court issued three separate opinions disposing of the Rochs' claims. In its first opinion, the court determined that all of the Rochs' claims, insofar as they related to the 51 dogs seized on October 20, 2001, were barred by *res judicata*, because the Rochs had a full and fair opportunity to litigate the seizure of dogs in the state court proceedings. The court also alternatively held that all of the Rochs' claims relating to the dogs failed on the merits, entitling Defendants to summary judgment. In its second and third opinions, the district court granted Defendants' motions for summary judgment on the merits of the Rochs' claims insofar as they related to the 39 heads of livestock seized on October 20, 2001.

## II. DISCUSSION

The Rochs now appeal the district court's rulings. We review the district court's grant of summary judgment *de novo*. *Moorer v. Baptist Memorial Health Care Sys.*, 398 F.3d 469, 486 (6th Cir. 2005). We have carefully considered the record on appeal, the parties' briefs and the applicable law, and we agree with the district court's determination that the Rochs' claims relating to the 39

heads of livestock are completely without merit. We also agree with the reasoning expressed in the district court's second and third opinions, and find that the issuance of a detailed opinion on the merits of the Rochs' claims regarding the 39 heads of livestock would serve no useful purpose. However, we note that the district court's conclusion that the Rochs' claims relating to the 51 dogs were barred by *res judicata* was legally incorrect. Rather than relying on *res judicata* the district court should have concluded, as we now conclude, that it was without jurisdiction to hear the Rochs' dog seizure claims under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine, named for the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "bars attempts by a federal plaintiff to receive appellate review of a state-court decision in federal district court." *Howard v. Whitbeck*, 382 F.3d 633, 638 (6th Cir. 2004); *see also United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (stating that *Rooker-Feldman* "stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States"). Where a federal plaintiff is attempting to attack an issue that was already litigated in state court, and "'the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction.'" *Hutcherson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir. 2003) (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)). We have previously adopted the following "rough guide" to distinguishing between *Rooker-Feldman* and *res judicata*: "if the federal plaintiff was the plaintiff in state court, apply res judicata; if the federal plaintiff was the defendant in state

court, apply *Rooker-Feldman* . . . A *defendant* who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion but for lack of jurisdiction [under *Rooker-Feldman*]." *Garry*, 82 F.3d at 1367 (emphasis in original) (quotations and citations omitted) (quoted in *Hutcherson*, 326 F.3d at 755).

In the instant case, the Rochs were the defendants in state court. The instant suit, insofar as it relates to the seizure of dogs, takes issue or expresses 'unhappiness' with the state court's decision granting the SBCHA the authority to remove and/or euthanize dogs on their property. The district court correctly found that the issues underlying the Rochs' claims were already litigated in state court, but because the Rochs are attempting to use a federal forum to attack the state court's judgment, *Rooker-Feldman*, and not *res judicata*, applies. Thus, we are without jurisdiction to review the Rochs' claim that Defendants unlawfully removed dogs from their farm.

### III.   CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment in its entirety.