NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0433n.06

No. 22-5127

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| WANDA TUBBS, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JEFF LONG, in his capacity as the Tennessee | ) | COURT FOR THE MIDDLE |
| Commissioner of Safety; STATE OF | ) | DISTRICT OF TENNESSEE |
| TENNESSEE; BRANDON GULLETT; | ) | |
| BRANDON KING; DARRYL YOUNG; | ) | |
| CANNON COUNTY, TENNESSEE, | ) | **OPINION** |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

**FILED**

Oct 24, 2022
DEBORAH S. HUNT, Clerk

Before:  MOORE, CLAY, and NALBANDIAN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge**.  Plaintiff Wanda Tubbs filed a complaint alleging that her Fourteenth and Fifth Amendment rights were violated as a result of a civil forfeiture proceeding.  She appeals the district court's determination that the court lacked jurisdiction over her claims under the *Rooker-Feldman* doctrine and that principles of res judicata bar consideration of her claims.  We hold that both the *Rooker-Feldman* and res judicata doctrines preclude consideration of her claims.  We **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Wanda Tubbs owned a home that she leased to her son Terrance Martin and his girlfriend Shaundra Smith.  R. 1 (Compl. ¶¶ 9–10) (Page ID #19).  On May 3, 2017, Cannon County Sheriff's Deputy Brandon King visited the home to serve Martin with a civil paper relating to child support.

*Id*. ¶ 8.  While serving the paper, King allegedly smelled marijuana.  *Id.* ¶ 11.  He returned to headquarters and reported this information to Investigator Brandon Gullett, who sought and obtained a search warrant for the property based on the odor.  *Id.* ¶ 11, 13.  In the affidavit supporting his request for a search warrant, Gullett averred that he had uncovered a "large amount of marijuana" in Martin's home three months earlier, when investigating a home invasion.  *Id.* ¶ 14 (Page ID #20).

On May 4, 2017, Cannon County Sheriff Darryl Young, Investigator Gullett, and other officers executed the search warrant.  *Id.* ¶ 17.  In the home, they found illegal drugs and approximately $154,000.  *Tubbs v. Long*, 610 S.W.3d 1, 4 (Tenn. Ct. App. 2020), *perm. app. denied* (Tenn. Sept. 16, 2020), *cert. denied* 141 S. Ct. 1750 (2021).  Some of that money was in a Michael Kors purse, which Tubbs alleged she had left at the house prior to the search.  She claims that the purse contained between $95,000 and $97,000.  R. 1 (Compl. ¶ 23) (Page ID #21).  Police contend that the purse held $93,740.  *Id.* ¶ 24.  During the search, police seized the purse, its contents, and three other containers of money.  R. 40 (D. Ct. Mem. Op. at 2) (Page ID #322).  They subsequently sought a forfeiture warrant on the grounds that the money constituted proceeds traceable to a violation of the Tennessee Drug Control Act.  *Id.*  Tubbs filed a claim with the Tennessee Department of Safety seeking the return of her purse and the money inside.  R. 1 (Compl. ¶ 27) (Page ID #22).

The Department of Safety held a hearing on her forfeiture claim, with a state administrative law judge ("ALJ") presiding.  *Id.* ¶ 28.  At the start of the hearing, Tubbs filed a motion to suppress the evidence gathered as a result of the search, alleging that the police fabricated the odor of marijuana and falsely claimed that they had recovered a large amount of marijuana from the house

several months earlier. *Id.* ¶ 29. The ALJ denied the motion to suppress, finding that Tubbs did not have standing under the Fourth Amendment to contest the search and that even if she did, the search warrant was valid. *Id.* ¶ 39 (Page ID #24). The ALJ then found that Tubbs had not shown by a preponderance of the evidence that the money belonged to her. *Id.* ¶ 41 (Page ID #25).

Tubbs sought review of the ALJ's determination in the Davidson County Circuit Court. *Id.* ¶ 42 (Page ID #25). The circuit court affirmed the ALJ. *Id.* ¶ 43. Tubbs then appealed to the Tennessee Court of Appeals. *Id.* ¶¶ 43, 44–46 (Page ID #25–26). The state court of appeals interpreted Tennessee Code Annotated § 53-11-201(f), which governs civil forfeitures, to require that a claimant demonstrate a proprietary interest in seized property as a threshold matter. *Tubbs*, 610 S.W.3d at 12–13. The court of appeals referred to this as "standing to challenge the forfeiture." *Id.* at 13. It then affirmed the ALJ, who had found that Tubbs had not shown by a preponderance of the evidence that the purse and money were hers. *Id.* The court did not address Tubbs's appeal of the ALJ's dismissal of Tubbs's motion to suppress, because her lack of standing to contest the forfeiture rendered the Fourth Amendment issue moot. *Id.* at 16–17. The court denied Tubbs's petition for rehearing. R. 20-2 (Order Denying Pet. Reh'g at 1) (Page ID #126). The Tennessee Supreme Court and the U.S. Supreme Court denied further review.

Tubbs filed this action in federal court after the state court of appeals denied her motion to rehear. She named as defendants the State of Tennessee and Jeff Long in his official capacity as Tennessee Commissioner of Safety (the "State Defendants"), as well as Cannon County, Tennessee and, in their individual capacities, Cannon County Sheriff Darryl Young and two Cannon County Sheriff's officers, Brandon Gullett and Brandon King (the "County Defendants"). In her complaint, she alleges two claims under 42 U.S.C. §1983 against all Defendants. In Count

I, she alleges that Defendants deprived her of property and liberty under the Fourteenth Amendment "[b]y implementing a forfeiture via administrative procedure that barred the Plaintiff from suppressing evidence for Fourth Amendment violations . . . ." R. 1 (Compl. ¶ 52) (Page ID #27). In Count II, she alleges that Defendants committed an uncompensated taking in violation of the Fifth Amendment by seizing her purse and the money therein and failing to compensate her. *Id.* ¶ 57 (Page ID #28–29). She also alleges a state-law trespass claim against King and Gullett, and a state-law conversion claim against King, Gullett, and Young. *Id.* ¶¶ 60–63 (Page ID #29–30). She seeks several forms of relief: injunctive relief against Commissioner Long and the State of Tennessee, ordering them to return the purse and its contents ($93,740); compensatory damages from Young, King, Gullett, and Cannon County in the amount of $475,000; punitive damages from King and Gullett; and reasonable attorney fees pursuant to 42 U.S.C. § 1988. *Id*. at 19 (Page ID #35).

State Defendants filed a motion to dismiss the lawsuit against them. R. 20 (Mot. to Dismiss Mem. of Law at 1) (Page ID #102). County Defendants filed a motion for judgment on the pleadings. R. 33 (County Def. Mot. at 1) (Page ID #280). Tubbs responded to both motions. R. 27 (Resp. to Mot. to Dismiss at 1) (Page ID #236); R. 35 (Resp. to County Def. Mot. at 1) (Page ID #300). The district court converted County Defendants' motion for judgment on the pleadings to a motion to dismiss for lack of subject-matter jurisdiction. R. 40 (D. Ct. Mem. Op. at 8) (Page ID #328). The district court granted the motion to dismiss, reasoning that *Rooker-Feldman* operated to bar federal-court jurisdiction in the case, and if it did not, that res judicata applied. *Id.* at 17, 20, 21–22 (Page ID #337, 340, 341–42). The district court then dismissed the state-law claims without prejudice, declining to exercise its supplemental jurisdiction. *Id.* at 26 (Page ID

#346).  Tubbs timely filed a notice of appeal on February 18, 2022.  R. 43 (Notice of Appeal at 1) (Page ID #350).

## II.  *ROOKER-FELDMAN* DOCTRINE

We review de novo a district court's dismissal for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine.  *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006).  The *Rooker-Feldman* doctrine arose from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  These cases held that lower federal courts do not have subject-matter jurisdiction "to review and reverse unfavorable state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).  In *Exxon*, the Supreme Court delimited the scope of the doctrine as "confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.  Tubbs brought two claims against Defendants:  a Fourteenth Amendment claim, alleging that Defendants applied the law unconstitutionally in her case, and a Fifth Amendment claim, alleging that Defendants took her property without compensation.  R. 1 (Compl. ¶¶ 51–59) (Page ID #27–29).  For the reasons explained below, we conclude that the district court properly dismissed both claims under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine applies only "when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006).  "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick*, 451 F.3d at 393.  To determine the source of the injury, we must look to the

5

allegations contained in the federal complaint, *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012), and to the plaintiff's request for relief, *Isaacs v. DBI-ASG Coinvestor Fund* (*In re Isaacs*), 895 F.3d 904, 912 (6th Cir. 2018).

Tubbs makes one broad counterargument against the application of *Rooker-Feldman*. She argues that there is a rule of thumb in the Sixth Circuit stating that *Rooker-Feldman* should be applied to parties who were defendants in state court, and res judicata should be applied to parties who were plaintiffs in state court. Appellant Br. at 21 (quoting *Hutcherson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir. 2003)). The rule of thumb she cites is more accurately described as a "rough guide" to determining whether to apply *Rooker-Feldman* or res judicata, and "should not be understood as a per se rule." *Hutcherson*, 326 F.3d at 755–56 (quoting *Garry v. Geils*, 82 F.3d 1362, 1365–67 (7th Cir. 1996)). We have never held that whether a party was the plaintiff or defendant in state court is dispositive of whether to apply *Rooker-Feldman* or principles of res judicata.

Tubbs also argues that she was not attacking or appealing the state court judgment but instead was challenging the law-enforcement officers who physically seized the purse and money and the Tennessee Department of Safety. We address this argument for each claim below, paying careful attention to both the source of the alleged injury and the relief requested.

## A. Fourteenth Amendment Claim

Tubbs's complaint alleges that the State and County Defendants violated her due process rights under the Fourteenth Amendment "[b]y implementing a forfeiture via administrative procedure that barred the Plaintiff from suppressing evidence for Fourth Amendment violations . . . ." R. 1 (Compl. ¶ 52) (Page ID #27). Tubbs challenges the constitutionality of the Tennessee

statute governing forfeiture in cases like hers, as applied by the ALJ in her forfeiture hearing and as interpreted and applied by the Tennessee Court of Appeals. *Id.* ¶¶ 52–55 (Page ID #27–28). Specifically, she objects to the procedure required by Tennessee Code Annotated § 53-11-201(f), as interpreted and applied by the Tennessee Court of Appeals in her own case, under which the Tennessee Department of Safety ALJ must inquire first whether an individual has standing to challenge a forfeiture before considering a motion to suppress evidence gathered allegedly in violation of the Fourth Amendment. Appellant Reply Br. at 3, 8. She claims that adjudicating standing to challenge the forfeiture before considering and ruling on a motion to suppress violates her Fourteenth and Fourth Amendment rights. R. 27 (Resp. to Mot. to Dismiss at 5) (Page ID #240); Appellant Br. at 31. As a remedy, she seeks an injunction ordering Defendants to return the purse and the money found inside (totaling $93,740), as well as compensatory damages from the County and individual defendants and attorney fees. R. 1 (Compl. at 19) (Page ID #35).

Although Tubbs sued state administrative actors and the state itself, rather than the Tennessee Court of Appeals, the source of her injury is clearly the judgment of the state court. She argues now that State Defendants deprived her of due process by effecting an administrative proceeding that did not permit her to suppress evidence that was allegedly illegally seized. Appellant Br. at 31. But State Defendants did not use the process that she argues violated her rights to due process. At her administrative hearing, the ALJ heard and ruled on her motion to suppress *before* determining whether she had standing to contest the forfeiture. R. 1 (Compl. ¶¶ 27–41) (Page ID #22–25); R. 20-1 (Pet. Reh'g at 6–7) (Page ID #122–23). When seeking rehearing of the Tennessee Court of Appeals' decision, Tubbs contended that "[t]hat was the right sequence." R. 20-1 (Pet. Reh'g at 5) (Page ID #121).

The Tennessee Court of Appeals, however, *did* use the sequence to which Tubbs objects, and declined to reach the merits of Tubbs's motion to suppress. *Tubbs*, 610 S.W.3d at 17. The state court reasoned that, because Tubbs failed to show by a preponderance of the evidence that she had a proprietary interest in the seized purse and money, she lacked standing to challenge the forfeiture, and therefore the court "pretermitted" decision on her motion to suppress. *Id.*

Tubbs took issue with the process afforded to her in the administrative hearing only after the state court decision. Her Fourteenth Amendment claim is a clear challenge to the constitutionality of the statute as applied by the Tennessee Court of Appeals—not as applied by the ALJ.[1] *See* R. 20-1 (Pet. Reh'g at 7) (Page ID #123) (arguing that "the statute would be unconstitutional if applied" to require a claimant to show they had a proprietary interest in seized property as a threshold matter); *id.* at 8–9 (Page ID #124–25) ("[T]he Court has used evidence gathered illegally, in order to find that the merits of the case weigh against Ms. Tubbs . . . and then used those same merits to decline to rule on whether the evidence was gathered illegally in the first place."); Appellant Br. at 33 ("[T]he Defendants used a state agency proceeding to take Tubbs's life savings, a proceeding whose laws did not allow her to litigate a motion to suppress . . . ."); *id.* at 31 ("Only when Tubbs took the matter to the Court of Appeals did the state judiciary announce a new procedure: Before any claimant may reap the benefits of suppressing illegally seized

---

[1] Tubbs has argued that *Rooker-Feldman* does not apply to decisions of state administrative agencies. Appellant Br. at 28–29 (quoting *Verizon Maryland, Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("The [*Rooker-Feldman*] doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.")). That question is not at issue here because, despite her pleading, she is not seeking review of just the decision of a state administrative agency but is also seeking review of the decision of the Tennessee Court of Appeals. Her claim effectively requests that the federal courts overrule the state court's decision as well as the administrative agency's decision.

evidence, first the claimant must prove her entire case *without* suppressing said evidence." (emphasis in original)).

This case differs from others in which we have held that lawsuits against other state actors were not barred by *Rooker-Feldman*. In both *Kovacic v. Cuyahoga County Department of Children and Family Services*, 606 F.3d 301 (6th Cir. 2010), and *Pittman v. Cuyahoga County Department of Children and Family Services*, 241 F. App'x 285 (6th Cir. 2007), the plaintiffs challenged the Cuyahoga County Department of Children and Family Services' underlying conduct leading up to a juvenile court's decision to award custody of their children to the County. *Kovacic*, 606 F.3d at 306; *Pittman*, 241 F. App'x at 286–87. In both cases, we determined that the plaintiffs were not challenging the juvenile court's decision to award custody to the county but were instead alleging that their rights had been violated by the Department of Children and Family Services either during its investigations or during its physical removal of the children from the home. *Kovacic*, 606 F.3d at 310–11; *Pittman*, 241 F. App'x at 288. These constituted "some other source of injury, such as a third party's actions," that make an independent claim that is not barred by *Rooker-Feldman*. *McCormick*, 451 F.3d at 393. Here, by contrast, Tubbs did not allege in her complaint that Defendants had engaged in any unconstitutional conduct beyond the application to her case of what she contends is an unconstitutional state law.

The remedy that Tubbs requested is further evidence that the source of her injury was the state court judgment. She seeks to recover the purse and money. R. 1 (Compl. at 19) (Page ID #35). But in order for her claim to succeed and for her relief to be granted, a federal court would have to conclude that the Tennessee Court of Appeals wrongly decided the issue of her standing to challenge the forfeiture and effectively reverse the state court judgment by ordering Defendants

to return the money and purse to Tubbs. *Cf. Durham v. Haslam*, 528 F. App'x 559, 564 (6th Cir. 2013) ("The relief that [Plaintiff] requested could not be granted without overturning the judgment of the state court that affirmed her discharge . . . ."). The district court correctly dismissed the Fourteenth Amendment claim against all Defendants for lack of subject-matter jurisdiction under *Rooker-Feldman.*

## B. Fifth Amendment Takings Claim

Tubbs also alleges that the State and County Defendants seized her purse and money without just compensation in violation of the Fifth Amendment. R. 1 (Compl. ¶¶ 57–59) (Page ID #28–29). This claim too is barred by the *Rooker-Feldman* doctrine. In *Roch v. Humane Society of Bedford County, Tennessee, Inc.*, 134 F. App'x 68 (6th Cir. 2005), the plaintiffs filed a Takings Clause claim in federal court alleging that the humane society had seized and euthanized their dogs without just compensation. *Id.* at 70. The plaintiffs in *Roch* filed that claim after there had been extensive litigation in state court over the seizure of the dogs. *Id.* We determined that the plaintiffs were "attempting to use a federal forum to attack the state court's judgment," because the suit "expresse[d] 'unhappiness' with the state court's decision" to grant the humane society the authority to seize the dogs. Therefore, we held that *Rooker-Feldman* applied. *Id.* at 71. This case is analogous. Tubbs's Fifth Amendment claim essentially takes issue with the Tennessee Court of Appeals' decision to affirm the decision of the Tennessee Department of Safety ALJ in her forfeiture proceeding.

For a federal court to rule in Tubbs's favor, it would have to overturn the determination of the Tennessee Court of Appeals that Tubbs lacked a proprietary interest in the money and the purse. Tubbs "would only prevail on [her] claims if the state court were wrong," so the state court

judgment is the source of her injury. *RLR Investments, LLC v. City of Pigeon Forge*, 4 F.4th 380, 388 (6th Cir. 2021). Our sibling circuits have held similarly; for example, the Tenth Circuit in *Campbell v. City of Spencer*, 682 F.3d 1278 (10th Cir. 2012), held that a Fifth Amendment claim challenging a state court forfeiture was "a direct attack on the state court's judgment because an element of the claim is that the judgment was wrongful." *Id.* at 1284. In that case, the plaintiff's allegations resembled Tubbs's allegations: "that the defendants deprived her of [compensation and] due process by unconstitutionally using Oklahoma's forfeiture procedures." *Id.* (emphasis removed) (quotation omitted). But there, as here, the forfeiture proceedings were ratified by the state courts. In Tubbs's case, the Tennessee Court of Appeals affirmed the Tennessee Department of Safety ALJ's determination that she did not have standing to contest the forfeiture. We agree with the district court that *Rooker-Feldman* bars subject-matter jurisdiction over this claim.

### III. CLAIM PRECLUSION

If Tubbs's claims against State Defendants were not barred by *Rooker-Feldman*, they would be barred by principles of res judicata.[2] "We review de novo a district court's application of the doctrine of res judicata." *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009). "Res judicata 'preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate.'" *Arangure v. Whitaker*, 911 F.3d 333, 337 (6th Cir. 2018) (alteration in original) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). There are two types of res judicata: issue preclusion and claim preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). State Defendants assert an affirmative defense of claim preclusion. State Appellee Br. at 16.

---

[2]County Defendants did not assert res judicata as a defense below. Consequently, we do not consider the applicability of res judicata principles with respect to County Defendants.

"When a case implicates [claim preclusion or issue preclusion doctrines], the full-faith-and-credit statute tells us to follow the preclusion rules adopted by the courts that adjudicated the prior proceedings." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021); 28 U.S.C. § 1738. We must look to Tennessee law to determine the effect of claim preclusion principles on Tubbs's federal case. In Tennessee, "[t]he doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 323–24 (Tenn. 2021) (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)). Claim preclusion is an affirmative defense, and a defendant must demonstrate: "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Jackson*, 387 S.W.3d at 491 (citations omitted). Here, Tubbs contests only the third element, that the same claim or cause of action was involved in both suits. Appellant Br. at 36. Tennessee courts have determined that "[t]wo suits . . . [constitute] the same 'cause of action' for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." *Creech v. Addington*, 281 S.W.3d 363, 381 (Tenn. 2009).

Both of Tubbs's federal claims arise out of the same transaction as her state court forfeiture case. Tubbs alleged a Fourteenth Amendment violation in her petition for rehearing before the Tennessee Court of Appeals. R. 20-1 (Pet. for Reh'g at 3–4) (Page ID #119–20). The Tennessee Court of Appeals denied that petition for rehearing, stating that the issues raised in the petition were "sufficiently addressed" in its opinion. R. 20-2 (Order Denying Pet. Reh'g at 1) (Page ID

#126). She sought review in the Tennessee Supreme Court, which declined to review the case, and in the U.S. Supreme Court, which denied her petition for certiorari. The instant complaint makes the same claim, asserting a violation of Tubbs's Fourteenth Amendment rights as a result of the civil forfeiture proceeding in the state administrative agency and state courts. Tubbs's Fourteenth Amendment claim would be barred by res judicata if *Rooker-Feldman* did not apply.

Tubbs's Fifth Amendment claim is also barred by principles of res judicata. Claim preclusion "applies not only to issues that were raised and adjudicated in the prior lawsuit, but to 'all claims and issues which were relevant and which could reasonably have been litigated in a prior action.'" *Davidson v. Bredesen*, 330 S.W.3d 876, 884–85 (Tenn. Ct. App. 2009) (quoting *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979)). The Fifth Amendment claim arises out of the same transaction as the prior litigation in state court, and Tubbs could have raised her Fifth Amendment claim in the state court litigation. As recognized by the district court, Tennessee courts have permitted individuals to raise constitutional challenges in judicial review of forfeiture decisions. R. 40 (D. Ct. Mem. Op. at 23) (Page ID #343); *see Stuart v. State Dep't of Safety*, 963 S.W.2d 28, 30 (Tenn. 1998) (considering on appeal whether forfeiture imposes punishment within the meaning of the double jeopardy clauses or is an excessive fine under the Eighth Amendment); *Fisher v. Tenn. Dep't of Safety & Homeland Sec.*, No. M2018-02041-COA-R3-CV, 2020 WL 1932487, at *2, 5 (Tenn. Ct. App. Apr. 21, 2020) (considering due process claims and Eighth Amendment claims related to a forfeiture action). Tubbs's Fifth Amendment claim was clearly relevant and could have been litigated in the state courts. We agree with the district court that the Fifth Amendment claim, as well as the Fourteenth Amendment claim, is subject to dismissal based on claim preclusion.

## IV. CONCLUSION

Tubbs's complaint requests review and reversal of a state court judgment, and thus the federal courts lack subject-matter jurisdiction under the *Rooker-Feldman* doctrine. Her federal claims also either were already litigated or could have been litigated in state court, and the principles of res judicata would bar consideration of her claims if *Rooker-Feldman* did not. Because the district court correctly dismissed the federal claims, it properly declined to exercise supplemental jurisdiction and dismissed the state-law claims without prejudice. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 953 (6th Cir. 2010). We **AFFIRM** the judgment of the district court.